UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRACIE GLASS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:13-cv-01492-DKL-WTL ) |
| CAROLYN COLVIN, | ) ) |
| Defendant. | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Tracie Glass ("Glass") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Glass's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

## I. BACKGROUND

### A. Procedural History

Glass filed an application for DIB on May 20, 2010, alleging an onset of disability of October 29, 2009. [Dkt. 16-2 at 22.] Glass's applications were denied initially on November 17, 2010, and upon reconsideration on December 21, 2010. [Id.] Glass requested a hearing, which was held on June 15, 2012, before Administrative Law Judge Angela Miranda ("ALJ"). The ALJ denied Glass's application on June 29, 2013. [Dkt. 16-2 at 19.] The Appeals Council denied Glass's request for review of the ALJ's decision on

July 26, 2013, making the ALJ's decision final for purposes of judicial review. Glass filed her Complaint with this Court on September 18, 2013. [Dkt. 1.]

### B. Factual Background and Medical History

Glass was born on June 20, 1966 and was 45 years old on the date of the hearing. She has past relevant work as a waitress and most recently as a customer service representative for a trade show decorator. In that position, Glass was responsible for coordinating the set-up and tear down of displays at two to four trade shows per week. Glass testified that she left her employment in 2009 because of pain and fatigue.

The ALJ found Glass suffers from the severe impairments of sleep disorders, carpal tunnel, right shoulder rotator cuff tear, post-menopausal osteoporosis, fibromyalgia and various mental impairments. As the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Glass requests review.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;

> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

**B. Standard for Judicial Review**

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for

> that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Glass v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Glass claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Glass contends the ALJ erred when she: (1) impermissibly "played doctor" by substituting her own opinions for that of treating physicians; (2) improperly analyzed Glass's fibromyalgia, carpal tunnel, headaches and blurry vision; (3) failed to account for her mental impairments in the RFC; and (4) negatively assessed Glass's credibility.

#### A. Assessment of Medical Opinions

Glass first asserts the ALJ impermissibly "played doctor" by substituting her own opinions for that of treating physicians by considering Glass's course of treatment to be "too conservative" to be disabled. [Dkt. 20 at 19.] Although the ALJ does use the term "conservative" to describe some of Glass's treatment, the opinion does not solely rely

4

upon this observation as the basis for the determination that Glass is not disabled. Moreover, characterizing treatment as "conservative" is not akin to "playing doctor," for which the Seventh Circuit consistently remands social security decisions. The cases in which the Seventh Circuit has concluded an ALJ "played doctor" are ones in which the ALJ ignored relevant evidence and substituted her own judgment. *Compare Myles v. Astrue,* 582 F.3d 672, 677–78 (7th Cir. 2009) (reversing because ALJ drew his own inferences from medical record without evidentiary support), *Boiles v. Barnhart,* 395 F.3d 421, 425–26 (7th Cir. 2005) (reversing because ALJ ignored relevant evidence in concluding that claimant had not presented evidence showing that seizures affected her functioning), *and Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) (reversing because ALJ rejected physician's opinion that claimant had arthritis without citing conflicting evidence in record), *with Pepper v. Colvin,* 712 F.3d 351, 366–67 (7th Cir. 2013) (concluding that ALJ did not substitute own judgment for that of medical professional when he considered all relevant evidence and factors), *and Dixon v. Massanari,* 270 F.3d 1171, 1177–78 (7th Cir. 2001) (concluding that ALJ did not "play doctor" where she thoroughly discussed the medical evidence).

The ALJ did not ignore relevant evidence and substitute her own judgment here. To support her argument to the contrary, Glass provides only one example: "[T]he ALJ discredited Ms. Glass's complaints of numbness and tingling in her hands, arms, legs and face because her reflexes were normal. Tr. 28. Reflexes do not measure sensation. This is another example of the ALJ substituting her own opinion for that of the treating physician." [Dkt. 20 at 20.] A review of the ALJ's opinion reveals that Glass omitted

5

several sentences of the ALJ's analysis. The ALJ did note Glass's reflexes were normal; however, the ALJ proceeded to explain that the physician also noted Glass's complaints were "non-specific and of an unclear etiology, though also mentioned a psychological component to the complaints might be present." [Dkt. 16-2 at 29.] The ALJ did not substitute her opinion for that of the physician. Rather, the ALJ pointed out that the physician was unable to identify a physical source for Glass's complaint of numbness and tingling. The Court finds that the ALJ's evaluation of the medical opinions is supported by substantial evidence.

### B. <u>Analysis of Impairments</u>

Glass next argues the ALJ improperly analyzed her impairments of carpal tunnel syndrome, fibromyalgia, headaches and blurry vision. The ALJ found Glass's carpal tunnel to be a severe impairment, however she also found Glass has the capacity to "frequently reach, handle and finger and has no limitations in the ability to feel." [Dkt. 16-2 at 28.] Glass asserts this finding is contrary to a medical source statement by her treating rheumatologist that noted Glass could only "use her arms for 15-20% of the day." [Dkt. 20 at 20.] This is a mischaracterization of Dr. Borgmeier's statement, which only limited Glass's *repetitive reaching* to 15-20 percent of the day, *not* the total use of her arms. Contrary to Glass's assertions, the ALJ thoroughly discussed not only Dr. Borgmeier's records, but also those of other medical providers who found mild to moderate carpal tunnel and accommodated those findings by limiting Glass to the sedentary exertional level and imposing a lifting restriction. Therefore, the Court finds there was substantial

evidence upon which to base a finding that Glass's carpal tunnel was not a disabling impairment.

Glass's remaining arguments with regard to the ALJ's analysis of her impairments are undeveloped and difficult to follow. Glass inexplicably faults the ALJ for finding her fibromyalgia to be a severe impairment and claims the ALJ did not account for her headaches and blurry vision, but fails to point to any evidence showing these impairments are severe enough to affect her ability to work. The Court does not need to address such skeletal arguments. *See United States v. Elst,* 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). As Glass made no further objections to the ALJ's examination of her impairments, the issue presents no basis for remand.

### C. Residual Functional Capacity

Glass also argues the ALJ's RFC did not adequately address her moderate limitations in concentration, persistence and pace. Specifically, Glass asserts the ALJ's limitation to "simple, routine tasks" was not sufficient to inform the vocational expert of such limitations. Yet Glass's argument omits a large portion of the ALJ's RFC and the hypothetical. In each, the ALJ noted that "the claimant has the capacity to use commonsense understanding to carry out instructions, deal with several concrete variables in standardized situations, and perform these mental capacities consistent with the demands of a normal workday. . . the capacity to appropriately interact with supervisors, coworkers, and the general public. . . the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place." [Dkt. 16-

7

2 at 28.] The Court finds this additional language in the RFC is sufficient explanation of Glass's moderate limitations in concentration, persistence and pace.

### D. Credibility of Glass

Finally, Glass asserts the ALJ failed to explain the factors and evidence that supported her decision to not credit Glass's testimony. Instead, Glass argues, the ALJ simply concluded with boilerplate language that Glass's symptoms are inconsistent with the RFC. An ALJ's credibility determination need not be flawless. *Simila,* 573 F.3d at 517. Only when it is "lack[ing] any explanation or support," will it be deemed "patently wrong." *Jones v. Astrue,* 623 F.3d 1155, 1160–62 (7th Cir. 2010); *Simila,* 573 F.3d at 517. Demonstrating that a credibility determination is patently wrong is a "high burden." *Turner v. Astrue,* 390 Fed.Appx. 581, 587 (7th Cir. 2010).

A closer look at the ALJ's opinion reveals support for the credibility determination beyond the boilerplate language referenced by Glass. The ALJ reviewed Glass's complaints including fatigue and reduced functioning, blurry vision, headaches and generalized hand weakness. Then, she compared these symptoms with the medical evidence in the record. For example, the ALJ noted that a sleep study did not substantiate Glass's complaints of difficulty sleeping, frequent nightmares and hallucinations. In addition, the ALJ detailed numerous visits to Dr. Borgmeier, Glass's treating rheumatologist, and Dr. Robinson, Glass's primary care physician, in which the findings were benign. As she reviewed the medical record, the ALJ noted that by the end of the summer of 2011, Glass "was still in no apparent distress and had normal neurological extremity examinations." [Dkt. 16-2 at 33.] It was in the context of this evidence that the

ALJ found Glass's complaints of disabling pain to not be credible. Contrary to Glass's allegations, the ALJ made a credibility determination based on the entire medical record and cannot be considered "patently wrong."

IV. **CONCLUSION**

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Glass does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

Date: 03/30/2015

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jonelle L. Redelman
REDELMAN LAW
jonelle@redelmanlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov